UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| HARLAN SHABSHELOWITZ,<br><br>        *Plaintiff*<br><br>v.<br><br>STATE OF RHODE ISLAND, Department of Public Safety, State Police and LIEUTENANT MICHAEL CASEY, individually and in his official capacity as a police officer employed by the State of Rhode Island<br>        *Defendants.* | C.A. No. 20-cv-00096-JJM-PAS |

**<u>DEFENDANTS', STATE OF RHODE ISLAND, DEPARTMENT OF PUBLIC SAFETY, STATE POLICE, AND LIEUTENANT MICHAEL CASEY INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY, JOINT MOTION TO DISMISS THE COMPLAINT</u>**

Plaintiff Harlan Shabshelowitz ("Plaintiff" or "Shabshelowitz") files this lawsuit alleging that the State of Rhode Island, Department of Public Safety, Rhode Island State Police, (collectively, "State Defendants") and Lieutenant Michael Casey, individually and in his official capacity,[1] ("Lt. Casey") violated his rights under the United States and Rhode Island Constitutions and state law in the course of prosecuting a criminal case against Shabshelowitz in Rhode Island Superior Court. The events giving rise to the criminal case against Shabshelowitz began in 2006—fourteen years ago—with the sale of a house for seemingly more than its appraised value, leading Lt. Casey (then a corporal) to begin an investigation into mortgage fraud. Along with others, Shabshelowitz was indicted by a grand jury in 2012, Compl. ¶ 19, and taken into custody and

---

[1] The Attorney General represents Lt. Casey in his official capacity only; he is separately represented in his individual capacity by Attorney Rajaram Suryanarayan, who joins in this motion.

1

arraigned in April 2013—seven years ago—for his role in the alleged mortgage fraud. *See* P1-2013-1029.[2] The charges against Shabshelowitz were eventually dismissed in June 2017, and he brings this suit on the belief that as charges were dismissed, the State's prosecution of him was wrongful and violated his rights. While the alleged mortgage fraud case was complicated, this case is simple: Shabshelowitz's claims are barred by the statutes of limitations, and he has failed to state claims upon which relief can be granted. For these reasons, this motion to dismiss must be granted.

**I.      STATEMENT OF FACTS**

The underlying criminal case leading to this civil suit began with an alleged suspicious property sale in 2006. Ex. A, P1-2013-1029A, Docket. In 2006, the property at 375 Ocean Road in Narragansett, Rhode Island sold for $2.4 million. Compl. ¶ 6. Several people including Plaintiff, Shabshelowitz, received money from the sale proceeds. *Id.* at ¶ 10. In 2010, the Rhode Island State Police opened an investigation into the sale, as the property appeared to have sold for much more than its appraised value. *Id.* at ¶¶ 13, 21(a)(i). Shabshelowitz and others who profited from the sale were investigated for mortgage fraud. *Id.* at ¶¶ 14-15. During the investigation, Lt. Casey also obtained several conflicting appraisals of the property, with values ranging from approximately $900,000 to over $2 million. *Id.* at ¶ 21(a). Lt. Casey also conducted a tape-recorded interview with Shabshelowitz about his role in the alleged scheme. *Id.* at ¶ 18. Lt. Casey also recorded an interview with John Mejeika, Tax Assessor for the Town of Narragansett, concerning an allegedly fraudulent letter from the town, which confirmed the highest appraisal number. *Id.* at ¶¶ 21(a)(i), (c)(i)-(iii).

---

[2] "A court may look to matters of public record in deciding a Rule 12(b)(6) motion without converting the motion into one for summary judgment." *Boateng v. InterAmerican Univ., Inc.*, 210 F.3d 56, 60 (1st Cir. 2000).

In 2012, a grand jury was convened to hear evidence against Shabshelowitz and his alleged co-conspirators. *Id.* at ¶ 19. Plaintiff claims that Lt. Casey made "knowingly false and defamatory statements under oath to a grand jury and to members of the State's judiciary" and "withheld or manipulated" evidence during the grand jury proceedings in order to attain an indictment. *Id.* at 29-30. He does not specify what the alleged false and defamatory statement were, but he alleges that Lt. Casey withheld property valuations that confirmed the $2.4 million purchase price and photographs of the property taken contemporaneously to the 2006 pre-sale inspection. *Id.* at ¶ 21 (a)(iv). Shabshelowitz also alleges that the recordings and transcripts of Lt. Casey's interviews with Shabshelowitz and the Tax Assessor Mejeika were incomplete or altered. *Id.* at ¶ 21(b), (d). He does not, however, state what information he believes is missing from the recordings or transcripts, except for Mejeika's recording lacking a formal sign-off. *Id*. at ¶ 21(d)(ii). Additionally, he claims that an exhibit displaying the history of the property contained incorrect information concerning the lot size and whether a guest house was included in previous listings. *Id.* at ¶ 21(f). Finally, Shabshelowitz claims that a "mandatory insurance binder" and a "Permanent Property Record Card" are "missing." *Id.* at ¶ 21(e), (h). However, if these items were missing, they could not have been presented at the grand jury proceedings. The members of grand jury indicted Shabshelowitz on two counts: obtaining money by false pretenses and conspiracy to obtain money by false pretenses; his co-conspirators were also indicted for several counts relating to the sale of the property. *Id.* at ¶ 19; Ex. B, P1-2013-1029A, Indictment.

Following the indictment, Plaintiff and his alleged co-conspirators were arrested in April 2013. *Id.* at ¶ 24; Exs. A, B. Then, in June 2017, the State agreed to dismiss the charges against Shabshelowitz as part of a plea agreement with one of his co-defendants. *Id.* at ¶ 28; Ex. C, P1-2013-1029A, 48A Dismissal; Ex. D, P1-2013-1029D, 48A Dismissal.

Shabshelowitz then brought this case in February 2020, alleging violations of his rights and various torts. ECF 1, Compl. The causes of action are as follows:

> A. Unlawful arrest in violation of the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983.
> B. Unlawful seizure in violation of Art. I, § 6 of the Rhode Island Constitution.
> C. False Arrest
> D. Malicious Prosecution
> E. Negligence
> F. Defamation
> G. Slander *Per Se*
> H. Intentional Infliction of Emotion Distress
> I. Negligent Infliction of Emotion Distress.

He also claims that Lt. Casey's supervisors failed to properly supervise and train their officers and encouraged their officers to engage in misconduct. *Id.* at ¶¶ 33-35. For the reasons set forth below, Plaintiff cannot succeed in these claims, and they should, therefore, be dismissed.

## II. PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTES OF LIMITATIONS

The events leading to this case began in 2006, fourteen years ago, with the house sale. The grand jury proceeding began in 2012, eight years ago. Shabshelowitz's arrest occurred in 2013, seven years ago, and his indictment occurred before the arrest. Consequently, all of Shabshelowitz's claims are barred by their respective statutes of limitations, except malicious prosecution.[3]

### A. Plaintiff's Claims for Unlawful Arrest, Unlawful Seizure and False Arrest are Barred by Three-Year Statute of Limitations.

---

[3] A claim for malicious prosecution has a time limit of three years but accrues when the initial case resolves in the plaintiff's favor. *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001). In this case, presuming that dismissal pursuant to a co-defendant's plea deal is a resolution in Plaintiff's favor, the charges against Shabshelowitz were dismissed in June 2017, and this case was filed in February 2020, within the three-year limit. *See* ECF 1.

For the claims of unlawful arrest in violation of the Fourth and Fourteenth Amendments brought under 42 U.S.C. § 1983, the offense takes its statute of limitations from the state law limitations of personal-injury torts. *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 124 (2005). In Rhode Island, this is three years from when the cause of action accrues. R.I. Gen. Laws § 9-1-14(b). For an arrest, the injury occurs when the arrest occurs. As the Supreme Court stated, "[t]here can be no dispute that petitioner could have filed suit as soon as the allegedly wrongful arrest occurred . . . so the statute of limitations would normally commence to run from that date." *Wallace v. Kato*, 549 U.S. 384, 388, 127 S. Ct. 1091, 1095, 166 L. Ed. 2d 973 (2007); *see also Richer*, 189 F. Supp. 3d at 343 ("Mr. Richer clearly knew of his injuries when the police entered his house and seized his guns").

Shabshelowitz was taken into custody in early April 2013. Compl. ¶ 24; Ex. A. He, however, filed this Complaint in February 2020, nearly seven years after his arrest, well beyond the three-year limit. ECF 1. Plaintiff could have filed this complaint at any point during the intervening years, but he failed to, forfeiting his claim. As a result, a claim for unlawful arrest should be dismissed.

With regard to the other claims arising from Shabshelowitz's arrest, unlawful seizure in violation of the Rhode Island Constitution Art. I, § 6 is analogous to the Fourth Amendment claims and also subject to a three-year limitation. *See Richer v. Parmelee*, 189 F. Supp. 3d 334, 343 (D.R.I. 2016); R. I. Gen. Laws § 9-1-25. Similarly, for a tort claim of false arrest under state law, the limitations period is also three years. R.I. Gen. Laws § 9-1-25. For these claims hinging on the April 2013 arrest, the three-year limitations period has run, and the claims must be dismissed.

    **B.**    **Plaintiff's Claims for Defamation and Slander *Per Se* are Barred by One-Year Statute of Limitations.**

Plaintiff's counts of defamation and slander *per se* both claim that the Lt. Casey made "a false and defamatory statement" concerning Shabshelowitz. Compl. ¶ 55-56. The Complaint further alleges that these alleged false and defamatory statements were "under oath to a grand jury and to member of the State's judiciary." Compl. ¶ 30. Shabshelowitz does not give precise dates for the grand jury testimony, only that the grand jury was convened in 2012, before Plaintiff was arrested. *See* Compl. ¶ 19, 24. The grand jury indictment was filed April 4, 2013, and any statements made to the grand jury were clearly made before then. Ex. A. Thus, Shabshelowitz is at least six years too late to bring these claims for defamatory statements, *See Francis v. Gallo*, 59 A.3d 69, 71 (R.I. 2013), as "[a]ctions for words spoken shall be commenced and sued within one year next after the words spoken, and not after." R.I. Gen. Laws § 9-1-14(a).

### C. Plaintiff's Claims for Negligence, Intentional Infliction of Emotion Distress, Negligent Infliction of Emotion Distress are Barred by Three-Year Statutes of Limitations.

The statute of limitations for negligence, intentional infliction of emotion distress and negligent infliction of emotion distress is also three years. R.I. Gen. Laws § 9-1-14; § 9-1-25. The Complaint, however, does not specify what acts or omissions of the State Defendants or Lt. Casey that Shabshelowitz believes caused him harm. *See* Compl. The alleged acts and omissions in the Complaint are as follows: opening an investigation, withholding or manipulating evidence in front of a grand jury, making defamatory statements about Plaintiff to the grand jury, arresting and prosecuting him, withholding evidence during discovery, failing to properly train State Police officers, and encouraging police officer misconduct. Compl. ¶ 12, ¶ 20-22, 24, 26, 30, 33-34. All these events occurred more than three years ago. The investigation was opened in 2010. Compl. ¶12. The grand jury was convened sometime in 2012, and Shabshelowitz was indicted, taken into custody and arraigned in 2013. Compl. ¶ 19, 24; Ex. A, Ex. B. The charges against him were

6

dismissed in June 2017. Ex. D. Any actions by the State Police officers investigating the case would have taken place well before the dismissal, and Shabshelowitz would have been aware of any harm to himself at the time. Ex. A. When he filed this case in February 2020, he was well beyond the three years to complain of negligence, IIED or NIED. ECF [1].

As the claims for unlawful arrest, unlawful seizure, false arrest, defamation, slander *per se*, negligence, IIED and NIED are untimely, they must be dismissed.

### III.   PLAINTIFF FAILS TO STATE ANY CLAIM FOR WHICH HE CAN RECOVER.

Even if Shabshelowitz's claims are not time-barred, the Court must still dismiss all counts in the complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. Pro. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While the Court accepts all factual allegations in the Complaint as true and draws reasonable inferences in a plaintiff's favor, *Stein v. Royal Bank of Canada*, 239 F.3d 389 (1st Cir. 2001), the Court is not required to accept "'unsupported conclusions or interpretations of law.'" *Id.* (quoting *Washington Legal Found. v. Massachusetts Bar Found.*, 933 F.2d 962, 971 (1st Cir. 1993). If the Complaint fails to state facts sufficient to establish a claim that is "'plausible on its face,'" the Complaint must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, a complaint stating "'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

### A. Plaintiff's Arrest Was Constitutional and Did Not Violate the Fourth and Fourteenth Amendments.

Shabshelowitz claims that he was unlawfully arrested in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution and brings this claim pursuant to 42 U.S.C. § 1983. An arrest, however, is lawful if the officer has probable cause. *Holder v. Town of Sandown*, 585 F.3d 500, 504 (1st Cir. 2009). "Probable cause exists when facts and circumstances would lead an ordinarily prudent and careful person to conclude that the accused is guilty." *Solitro v. Moffatt*, 523 A.2d 858, 861-62 (R.I. 1987). That is to say, the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). A grand jury indictment is "*prima facie* evidence of probable cause." *Hill v. Rhode Island State Employees' Retirement Bd.*, 935 A.2d 608, 614. "When the plaintiff was bound over by a court and indicted by the grand jury, satisfactory evidence of probable cause was established." *Id.* at 613. To rebut this presumption, "the plaintiff must allege some additional fact showing fraud, perjury, or other undue means." *Id.* at 613-14.

At the time he was taken into custody, Shabshelowitz had been indicted by a grand jury, giving probable cause for the arrest. Compl. ¶¶ 23-24; Exs. A, B. While Plaintiff provides a laundry list of evidence that he alleges would have conclusively proved his innocence of the charges, none of these items tend to show fraud, perjury, or any other "undue means." Compl. ¶ 20-22. The evidence allegedly withheld include photographs of the property at the time of the inspection, differing information on the lot size and inclusion of a guest house, the alleged missing insurance binder and permanent property record card. *Id.* at ¶ 21. At best, these documents could have supported a higher valuation of the property, but they would not conclusively prove that the $2.4

million sale price was a reasonable price or that the differing valuations were incorrect. The alleged altered evidence included recordings and transcripts of Lt. Casey's interviews with Shabshelowitz and the Tax Assessor Mejeika, but Plaintiff did not state what information he believes are in those recordings or transcripts that would exonerate him, making it impossible to know if they would help or hurt his case. Even assuming the allegations in the Complaint are true, it does not contain sufficient facts to demonstrate "fraud, perjury, or other undue means" sufficient to rebut the presumption of probable cause for his arrest.

To the extent that Plaintiff believes that the State Police and Department of Public Safety are liable for his arrest through *respondeat superior*, Plaintiff cannot bring a supervisory liability claim under 42 U.S.C. § 1983. It is well settled that a plaintiff cannot bring a claim for vicarious liability under section 1983. In *Ashcroft v. Iqbal*, the Supreme Court stated that in "a Section 1983 suit or a Bivens action—where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer," 556 U.S. 662, 667 (2009); "[a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* This continues the long line of precedent prohibiting *respondeat superior* liability in such cases. *See, e.g.*, *Monell v. Dept. of Social Services*, 436 U.S. 658, 690-92 (1978); *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 562 (1st Cir. 1989). "Because vicarious liability is inapplicable to Bivens and Section 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft*, 556 U.S. 667. "Under 42 U.S.C. § 1983, a supervisory official may be held liable for the behavior of his subordinates only if (1) the behavior of [his] subordinates results in a constitutional violation, and (2) the [supervisor]'s action or inaction was affirmative[ly] link[ed] to that behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross

negligence amounting to deliberate indifference." *Pineda v. Toomey*, 533 F.3d 50, 54 (1st Cir. 2008) (citations and quotations omitted). Further, "the plaintiff must show that the official had actual or constructive notice of the constitutional violation." *Feliciano-Hernandez v. Pereira-Castillo*, 663 F.3d 527, 533 (1st Cir. 2011) (citations omitted).

A supervisor's act or omission may be in "formulating a policy, or engaging in a custom, that leads to the challenged occurrence . . . he may be liable for the foreseeable consequences of such conduct if he would have known of it but for his deliberate indifference or willful blindness, and if he had the power and authority to alleviate it." *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 582 (1st Cir 1994) (citations omitted). Lastly, "isolated instances of unconstitutional activity ordinarily are insufficient to establish a supervisor's policy or custom, or otherwise to show deliberate indifference." *Id*. (citations omitted). To be actionable as constitutional violations, acts or omissions must constitute more than mere negligence; instead, they must amount to a reckless or callous indifference to the constitutional rights of others. *See Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986); *see also Germany v. Vance*, 868 F.2d 9, 17-18 (1st Cir. 1989).

Here, Plaintiff provides no facts to back up his conclusory statements that the State Defendants failed to properly train and supervise State Police officers. Compl. ¶ 33-34. He does not provide any facts to support his allegations that the State Police encouraged misconduct and were deliberately indifferent to the alleged misconduct. *Id.* at ¶¶ 34. Shabshelowitz also does not name any State agents besides Lt. Casey in the complaint, and the State itself is not a person under 42 U.S.C. § 1983. *See Will v. Michigan*, 491 U.S. 58, 71 (1989). It is impossible to establish that a supervisor's conduct was an independent violation of Plaintiff's rights without naming a

supervisor or, at the very least, explaining the objectionable conduct. Plaintiff cannot sustain his claim for supervisory liability pursuant to section 1983.

      **B.    Plaintiff's Arrest was Constitutional and Did Not Violate Art. I, § of the Rhode Island Constitution.**

Shabshelowitz next claims that he was "unlawfully seized" pursuant to Art. I, Sec. 6 of the Rhode Island Constitution. Compl. ¶¶ 39-47. This is essentially the same claim as the previous count: "With minor exceptions not applicable here, Art. 1, § 6 of the Rhode Island Constitution is co-extensive with the Fourth Amendment of the United States Constitution." *Brousseau By & Through Brousseau v. Town of Westerly By & Through Perri*, 11 F. Supp. 2d 177, 183 (D.R.I. 1998). And the analysis is the same: an arrest supported by probable cause is lawful. *Holder,* 585 F.3d at 504. The grand jury indictment creates a presumption of probable cause that Plaintiff can rebut only with evidence of fraud, perjury or other undue means. *Hill*, 935 A.2d at 613-14. As analyzed in the previous section, Plaintiff does not plead facts sufficient to support a claim of fraud, perjury or other undue means to rebut the presumption of probable cause. His arrest was, therefore, constitutional under the Rhode Island Constitution.

      **C.    Plaintiff's Arrest was Lawful and Does Not Satisfy the Elements of False Arrest under State Law.**

Plaintiff next complains that he was falsely arrested in violation of state law. Compl. ¶ 49. "Damages for false arrest or false imprisonment in Rhode Island are available only when the imprisonment is improper or unjustified." *Dyson v. Pawtucket*, 670 A.2d 233, 238 (R.I. 1996). "To establish this cause of action, a plaintiff must show more than that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. It is an essential element that the plaintiff show that he or she was detained without legal justification or under a void

process." *Id.* at 7–8. It is undoubted that Shabshelowitz was taken into custody, that he was aware of it, and did not consent. *See* Ex. A. However, "probable cause is a complete defense to a false arrest claim." *Henshaw v. Doherty*, 881 A.2d 989, 919 (R.I. 2005). As discussed above, Plaintiff was arrested following an indictment from a grand jury, prima facie evidence of probable cause. *Hill*, 935 A.2d at 614. At the time of his arrest, the arresting officer had probable cause to arrest him. *See* Ex. B.

### D. The Criminal Case Against Plaintiff was Supported by Probable Cause and Not Initiated Maliciously.

Next, Plaintiff claims that the criminal case against him was not supported by probable cause and instituted maliciously. Compl. ¶ 51. "Although the tort of malicious prosecution long has been recognized in this jurisdiction, it is nevertheless a disfavored cause of action because it 'tend[s] to deter the prosecution of crimes and/or chill free access to the courts.'" *Ims v. Town of Portsmouth*, 32 A.3d 914, 922 (R.I. 2011) (quoting *Brough v. Foley*, 572 A.2d 63, 66 (R.I. 1990)). In order to sustain a claim for malicious prosecution, "a plaintiff must prove the following four elements: (1) that the defendant initiated a prior criminal action against him or her, (2) that the defendant lacked probable cause to initiate that proceeding, (3) that the defendant brought the proceeding 'maliciously,' and (4) that the proceeding terminated in the plaintiff's favor." *Soares v. Ann & Hope*, 637 A.2d 338, 345 (R.I. 1994); *see also Senra v. Cunningham*, 9 F.3d 168, 174 (1st Cir. 1993). Consequently, "[a] higher standard of proof, 'clear proof,' is therefore required for the elements of lack of probable cause and malice." *Soares*, 637 A.2d at 345 (quoting *Solitro v. Moffatt*, 523 A.2d 858, 861-62 (R.I. 1987)).

As an initial matter, it is not clear that a dismissal as part of a co-defendant's plea is evidence of "the proceeding terminat[ing] in the plaintiff's favor." *Soares*, 637 A.2d 345. Other cases where the proceeding terminated in a plaintiff's favor included a verdict of not guilty at trial,

*Id.* at 342; grant of a motion for judgment of acquittal, *Solitro*, 523 A.3d at 861; acquittal at a bench trial. *Henshaw*, 881 A.2d at 913. These are all decisions on the merits, whereas in Shabshelowitz's case his dismissal was merely an incentive for another defendant to plead, not a decision on the merits of his own case. *See* Exs. C, D.

Much like false arrest, probable cause is a complete defense to malicious prosecution. *Horton v. Portsmouth Police Dept.*, 22 A.3d 1115, 1122 (R.I. 2011); *see also Vigeant v. United States*, 245 Fed.Appx. 23, 24 (1st Cir. 2007). In order to demonstrate lack of probable cause, "[t]he facts known to the person who initiated the criminal proceeding did not provide reasonable grounds to believe that the accused committed criminal activity." *Soares*, 637 A.2d at 345. And in the case of malicious prosecution, a plaintiff must meet the higher standard of "clear proof" for the prongs of maliciousness and lack of probable cause. *Solitro*, 523 A.3d at 861-62. As analyzed above, the arresting office had probable cause for Shabshelowitz's arrest based on the grand jury indictment; similarly, the State Defendants had probable cause for the prosecution. *See* Ex. B. Taking all Plaintiff's statements as true, Lt. Casey had documents appraising the value of the property from $910,000 to $2.4 million—substantial variance—and Plaintiff admitted to receiving money from the sale, which was much higher than an appraisal from the forensic appraiser. Compl. ¶¶ 6, 10, 21. Plaintiff does not plead facts sufficient to constitute "clear proof" of lack of probable cause for his prosecution.

Even if he were able to show "clear proof" of the lack of probable cause, Shashelowitz must still demonstrate that the proceedings were initiated maliciously. Malice "may be established by showing that the person initiating the original action was actuated by a primary motive of ill will or hostility, or did not believe that he would succeed in that actions." *Nagy v. McBurney*, 392 A.2d 365, 367 (R.I. 1987). Plaintiff presents *no facts* tending to support his claims that the State

Defendants or Lt. Casey "maliciously instituted a criminal action" against him. Compl. ¶ 51. This is exactly the kind of "naked assertion devoid of further factual enhancement" that *Twombley* and *Iqbal* prohibit.

### E. Plaintiff Fails to Provide any Facts to Support His Count for Negligence.

Shabshelowitz alleges that the State Defendants and Lt. Casey "by their individual and concerted act and/or omissions, including, but not limited to, those described herein, failed or refused to exercise reasonable care to avoid inflicting reasonably foreseeable harm to the Plaintiff." Compl. ¶ 53. This is the entirety of the claim. He provides no facts whatsoever indicating what conduct he believes was negligent or what harm he believes to have suffered as a result. While some of his other counts have obvious connections to the facts alleged in the complaint, this is not the case for negligence, instead leading State Defendants and Lt. Casey on a scavenger hunt through the Complaint for actions that may have been negligent. Thus, his claim gives the State Defendants and Lt. Casey no notice of the claims against them and fails to demonstrate "facial plausibility" as he fails to "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It should, therefore, be dismissed.

### F. Statements Made to the Grand Jury are Absolutely Privileged and Cannot Sustain Claims for Defamation or Slander *Per Se*.

Plaintiff claims that Lt. Casey made false and defamatory statements about Shabshelowitz to the grand jury. Compl. ¶¶ 30-31. Any Statements that Lt. Casey made to the grand jury are protected by privilege and cannot be defamation or slander *per se*. "The elements of a cause of action for defamation are: (1) the utterance of a false and defamatory statement concerning another; (2) an unprivileged communication to a third party; (3) fault amounting to at least negligence; and (4) damages." *Cullen v. Auclair*, 809 A.2d 1107, 1110 (R.I. 2002) (per curiam). In order to succeed

14

on a claim of slander *per se*, a false statement "must impute to the other: (1) a 'criminal offense,' (2) a 'loathsome disease,' (3) a 'matter incompatible with his business, trade, profession, or office,' or (4) a 'serious sexual misconduct.'" *Marcil v. Kells*, 936 A.2d 208, 212 (R.I. 2007) (quoting Restatement (Second) Torts § 570 at 186 (1977)). Plaintiff cannot meet his threshold burden.

As an initial matter, Plaintiff does not state what Lt. Casey said that was allegedly false and defamatory; Shabshelowitz only vaguely states that Lt. Casey accused Shabshelowitz of being involved in the 2006 sale of the house in Narragansett and "engaging in criminal conduct." *Id.* at ¶¶ 27, 29. These statements are vague and not sufficient to "give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp.Twombly*, 550 U.S. 544, 545, (2007) (citation omitted). Thus, the count does not meet the requirements set out in Fed. R. Civ. Pro. 8.

Here, Lt. Casey's communication to a third party is absolutely privileged because it was communication to the *grand jury*. "Certain communications in connection with judicial proceedings are immune from suit because they enjoy an absolute privilege." *Ims*, 32 A.3d at 927 (citing *Vieira v. Meredith*, 123 A.2d 743, 744 (R.I. 1956)). "Generally, absolute privilege is afforded in the context of judicial proceedings to encourage witnesses to come forward and speak freely about civil or criminal matter." *Ims v. Town of Portsmouth*, 32 A.3d 914, 928 (R.I. 2011) *Ims*, 32 A.3d at 928. Absolute privilege protects "communications made during judicial proceedings or made to prosecutors investigating a criminal proceeding from the charge of defamation because of the importance of the public interest in encouraging such communications." *U.S. ex rel. Vasudeva v. Dutta-Gupta*, 2014 WL 6811506 *11 (D.R.I. 2014); *see Francis v. Gallo*, 59 A.3d 69, 71 (R.I. 2013) ("statements made in judicial proceedings are privileged, and thus cannot form the basis for a defamation claim"); *Ims*, 32 A.3d at 927 ("Generally, absolute privilege

is afforded in the context of judicial proceedings to encourage witnesses to come forward and speak freely about civil or criminal matters."). Whatever alleged defamatory statements Lt. Casey made concerning Shabshelowitz complained of here were made as a witness in grand jury proceedings and are therefore absolutely privileged and beyond the reach of a defamation or slander claim.

### G. Plaintiff was not exposed to any conduct that could sustain a claim for Intentional or Negligent Infliction of Emotional Distress.

Shabshelowitz next attempts to claim that the State Defendants and Lt. Casey's actions in investigating, indicting, arresting and prosecuting him amount to intentional infliction of emotional distress ("IIED") or negligent infliction of emotional distress ("NIED"). None of the Defendants' alleged actions, however, can be shoehorned into these causes of action. In order to sustain a claim for IIED, (1) the conduct must be intentional or in reckless disregard of the probability of causing emotional distress, (2) the conduct must be extreme and outrageous, (3) there must be a causal connection between the wrongful conduct and the emotional distress, and (4) the emotional distress in question must be severe.'" *Norton v. McOsker*, 407 F.3d 501, 510 (1st Cir. 2005) (quoting *Champlin v. Washington Trust Co. of Westerly*, 478 A.2d 985, 989 (R.I. 1984). "In addition, . . . Rhode Island also requires that there be some medical proof establishing physical symptoms of distress." *Norton*, 407 F.3d at 510 (citing *Clift v. Narragansett Television L.P.*, 688 A.2d 805, 813 (R.I. 1996)).

To prove IIED, the extreme and outrageous conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Norton v. Hoyt*, 278 F.Supp.2d 214, 221 (D.R.I. 2003) (quoting Restatement (Second) of Torts §46.). This is a "very high standard."

*Hoffman v. Davenport-Metcalf*, 851 A.2d 1083, 1090 (R.I. 2004). In fact, it is such a high standard, that the court rarely finds that conduct is extreme and outrageous. *See e.g. Swerdlick v. Koch*, 721 A.2d 849 (surveillance of a neighbor to prove a zoning violation not extreme and outrageous); *Curtis v. State Department for Children and Their Families*, 522 A.2d 203 (R.I. 1987) (hospitalizing child for suspected child abuse and refusing contact with parents not extreme and outrageous); *Bedard v. Notre Dame Hospital*, 151 A.2d 690 (R.I. 1959) (unlawful detention of infant at hospital not extreme and outrageous). Here, Shabshelowitz states that the State Defendants and Lt. Casey interviewed and prosecuted him. He makes no claims that he was harassed, mistreated or injured in the course of the case. The State Defendants and Lt. Casey's conduct in investigating and prosecuting Shabshelowitz's criminal case does not come anywhere near extreme and outrageous.

Shabshelowitz is no more successful with NIED. While Rhode Island does recognize NIED, it only recognizes it "in limited circumstances where the plaintiff is either in the zone of physical danger, or is a bystander to a tragic incident involving someone with whom he or she is closely related, and the plaintiff suffers serious emotional harm accompanied by some physical manifestations of his or her distress as a result of the defendant's negligence." *Swerdlick v. Koch*, 721 A.2d at 864; *see also Fritz v. May Dept. Stores Co.*, 866 F.Supp. 66, 69 (D.R.I. 1994). Nothing in the Complaint indicates Shabshelowitz was at risk of physical danger or a witness to a tragic accident involving a close relation.

Finally, Plaintiff vaguely alleges that the State Defendants failed to properly train and supervise Lt. Casey and other officers concerning seizure and arrest, that the State Defendants had a policy of encouraging misconduct to which is was deliberately indifferent, and that the State Defendants are liable for the actions of its agents which injured Plaintiff. Compl. ¶¶ 33-35.

17

Shabshelowitz does not provide any facts to support these assertions nor has he credibly pled any misconduct by Lt. Casey or any other state agent. Thus, the State cannot be held liable for failure to train, encouraging misconduct or any misconduct pursuant to *respondeat superior*.

**IV.     THE STATE AND STATE OFFICIALS ARE NOT PERSONS UNDER 42 U.S.C. § 1983.**

Finally, Plaintiff asks for money damages in compensation for the alleged violations of his rights. His section 1983 claims for monetary damages fail against the State Defendants and Lt. Casey in his official capacity because they are not "person[s]" within the meaning of the section. In *Will v. Michigan,* the Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." 491 U.S. 58, 71 (1989). In reaching its decision, the Court first noted that "in common usage, the term 'person' does not include the sovereign, [and] statutes employing the [word] are ordinarily construed to exclude it." *Will*, 491 U.S. at 64 (citations omitted). Furthermore, the Court observed that section 1983 "falls far short of satisfying the ordinary rule of statutory construction that if Congress intends to alter the 'usual constitutional balance between the States and the Federal Government,' it must make its intention to do so 'unmistakably clear in the language of the statute.'" *Id.* at 65 (quoting *Atascadero State Hospital*, 473 U.S. 243, 242 (1989)). Finally, in determining congressional intent as to the scope of section 1983, the Court concluded that Congress did not intend for section 1983 to provide a federal forum for litigants seeking a remedy against a State for alleged deprivations of civil liberties. *Id.* at 70–71.

In *Jones v. State of Rhode Island*, the First Circuit applied the Supreme Court's holding in *Will,* holding that "neither the State of Rhode Island nor any of its officials acting in their official capacities, are 'persons' that can be held liable under § 1983." 724 F. Supp. 25, 28 (1st Cir. 1989). In this case, the State of Rhode Island, Department of Public Safety and Rhode Island State Police

are clearly not persons, and Lt. Casey, in his official capacity, is also not a "person" within the meaning of section 1983. Consequently, Plaintiff is not entitled to monetary damages against the State Defendants or Lt. Casey in his official capacity, and any such claim is barred for his section 1983 claim.

## V. CONCLUSION

Shabshelowitz's claims against the State Defendants and Lt. Casey individually and in his official capacity are time barred (with the exception of malicious prosecution), but he also fails to state any claim upon which relief can be granted against any Defendant. Therefore, Shabshelowitz's Complaint should be dismissed.

Respectfully submitted,

**Defendants,
STATE OF RHODE ISLAND,
DEPARTMENT OF PUBLIC SAFETY,
RHODE ISLAND STATE POLICE, and
LIEUTENANT MICHAEL CASEY, in
his official capacity,**

By:

PETER F. NERONHA
ATTORNEY GENERAL

*/s/ Lauren E. Hill*
Lauren E. Hill, # 9830
Special Assistant Attorney General
150 South Main St.
Providence, RI 02903
Tel: (401) 274-4400, ext. 2038
Fax: (401) 222-2995
lhill@riag.ri.gov

**Defendant, LIEUTENANT MICHAEL CASEY, individually,**

By his Attorney,

*/s/ Rajaram Suryanarayan*
Rajaram Suryanarayan (#4451)
Gunning & LaFazia, Inc.
33 College Hill Road, Suite 25B
Warwick, Rhode Island 02886
Tel: 401-521-6900
Fax: 401-521-6901
Direct Dial: 401-521-2647
rsury@gunninglafazia.com

**CERTIFICATE OF SERVICE**

I hereby certify that I filed the within document via the ECF filing system on October 9, 2020 and that a copy is available for viewing and downloading.

*/s/ Ellen Ullucci*