UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

HARLAN SHABSHELOWITZ,
    Plaintiff,

v.

STATE OF RHODE ISLAND;
DEPARTMENT OF SAFETY; STATE
POLICE; and LIEUTENANT
MICHAEL CASEY, individually and in
his capacity as a police officer
employed by the State of Rhode Island,
    Defendants.

C.A. No. 20-cv-096-JJM-PAS

## ORDER

Plaintiff Harlan Shabshelowitz, a self-described "middleman" in a real estate transaction in Narragansett, Rhode Island between a buyer and seller, paid out and received funds from the sale of that property. The property sale and related transactions raised red flags for law enforcement, resulting in an investigation and grand jury indictments for several individuals, including Mr. Shabshelowitz. He was indicted on two criminal counts: obtaining money under false pretenses and conspiracy to obtain money under false pretenses. He moved to dismiss those charges in state court arguing that Rhode Island State Police Lieutenant Michael Casey, also a defendant here, maliciously prosecuted him. Two state courts denied his motions; however, the case ultimately ended with the State dismissing the charges.

Mr. Shabshelowitz filed a one count Complaint for malicious prosecution against Defendants State of Rhode Island, Department of Public Safety, Rhode Island

State Police (collectively, the "State Police") and Lt. Casey, individually and in his official capacity (collectively "Defendants"). Defendants move for summary judgment, arguing initially that collateral estoppel bars the claim but also that it fails on the merits. ECF No. 53. Because the Court agrees that Mr. Shabshelowitz has already litigated this claim in state court, collateral estoppel applies and so the Court dismisses this action.

## I. BACKGROUND

Eugene O'Brien bought property at 375 Ocean Road, Narragansett, Rhode Island ("Property") from Freddie Carrozza for $ 2.4 million, with a mortgage from Coastway Credit Union ("Coastway") for $ 2.28 million. He secured this financing in part based on local realtors Verna Gauthier and Joseph Lyman's appraisals of the Property for $2.4 million, but it appeared that the Property's actual value was much less. Mr. O'Brien lost the Property to foreclosure after he defaulted on his loan. It was sold for $610,000 nearly four years later, resulting in a net loss of over $1,670,000.

The original transaction between Mr. O'Brien and Mr. Carrozza garnered some suspicion in Narragansett, prompting retired Rhode Island State Police Officer Thomas Denniston and realtor, John Hodnett of Lila Delman Real Estate, to alert Lt. Casey. Officer Denniston was concerned that the Property was bought by "straw buyers" at an inflated price. Lt. Casey launched an investigation and identified several incidents of suspicious activity surrounding the transaction. He focused not only on the purchase price and the loan that secured the purchase which were

2

believed to be overinflated,[1] but also the back-and-forth of the transaction itself where it appears that loan proceeds changed hands freely between Mr. Shabshelowitz and other players. Lt. Casey originally interviewed Ms. Shabshelowitz about his role in the real estate transaction, thinking he might be just a witness, but eventually came to believe that he played a part in the illegal scheme.

Mr. O'Brien was arrested on charges of obtaining money under false pretenses and conspiracy to obtain money under false pretenses. Soon after, the Rhode Island Attorney General assembled a grand jury and presented evidence about the mortgage fraud in connection with the sale. During those proceedings, the State presented testimony from Lt. Casey[2] and other State Police detectives, over 250 exhibits, and an Affidavit of unindicted co-conspirator David Gauthier, who provided details of the

---

[1] Because this suit deals only with whether the State maliciously prosecuted Mr. Shabshelowitz and this motion is based on collateral estoppel, the Court expresses no opinion on the merits of the underlying state case rising from the real estate transaction. Therefore, the Court's factual recitation of the underlying criminal case is purposefully brief.

[2] Lt. Casey's investigation consisted of, in part: researching the Narragansett land evidence records and obtaining the loan files; reviewing emails between Mr. Hodnett and closing attorney, Marc Greenfield, at the time of the sale in September 2006, where Mr. Hodnett predicted that the Property would likely foreclose; interviewing two licensed realtors who opined that, at the time of sale, the value of the Property was "at best" between $900,000 and $1,000,000; interviewing the highest bidder on the Property before the sale who, upon confirming his offer for $900,000, opined that the Property was a "mess" and that he intended to raze the residence to build a new one if his bid was successful; interviewing the Narragansett Tax Assessor, John Majeika, about a tax appraisal done by Appraisal Resources that assessed the Property at a value close to Mr. O'Brien's purchase price who noted that the value in the appraisal letter sent to Mr. Carrozza was not only indefensible, but that he never saw or approved the letter, to which his signature was affixed, before it was sent.

3

sale and Mr. Shabshelowitz's involvement. After thirteen months of proceedings, the grand jury indicted Mr. Shabshelowitz.

Following his indictment, Mr. Shabshelowitz moved to dismiss the criminal charges against him, accusing Lt. Casey of misconduct in the grand jury proceedings. He claimed that the State was guilty of prosecutorial misconduct because it presented false evidence that led to the decision to indict, tampered with a tape of his interview with Lt. Casey, identified a document as false, and withheld an insurance appraisal that matched the mortgaged value.[3] A state court Magistrate rejected his arguments and he appealed to Rhode Island Superior Court, where an Associate Justice also denied his motion to dismiss the indictment. The indictment stood but eventually the Attorney General dismissed all charges against Mr. Shabshelowitz as part of a larger plea bargain deal with other co-conspirators.

Mr. Shabshelowitz filed this Complaint against the Rhode Island State Police and Lt. Casey, in his official and individual capacities, under the Fourth and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. § 1983, and Article I, § 6 of the Rhode Island Constitution. He alleges that

---

[3] The grand jury heard about three appraisals–the two that supported Mr. O'Brien's $2.4 million loan and one from Andolfo Appraisal Associates, who the Rhode Island Attorney General hired, to perform a forensic appraisal review of two supportive appraisals contained within Coastway's loan file. Andolfo found neither of the appraisals to be defensible or credible. The third appraisal from Chubb Insurance, which the grand jury did not learn about, was for replacement value, considering the purchase price rather than actual value. Additionally, Lt. Casey testified that he did not learn of the Chubb appraisal until this litigation; he did not present this evidence to prosecutors and/or the grand jury because he did not have it.

4

Lt. Casey manipulated evidence presented to the grand jury about the Property's value and withheld exculpatory evidence. Defendants move for summary judgment. ECF No. 53.

## I. STANDARD OF REVIEW

When making a summary judgment determination, the Court must review the entire record and consider the facts and inferences in the light most favorable to the nonmoving party. *Cont'l Cas. Co. v. Canadian Univ. Ins. Co.*, 924 F.2d 370, 373 (1st Cir. 1991). Federal Rule of Procedure 56(a) dictates that summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute of material fact is an issue that "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A dispute is "genuine" when "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." *Rivera-Muriente v. Agosto-Alicea*, 959 F.2d 349, 352 (1st Cir. 1992) (citing *United States v. One Parcel of Real Prop.*, 960 F.2d 200, 204 (1st Cir. 1992)). If there is a genuine dispute of a material fact, that dispute would "need[ ] to be resolved by a trier of fact." *Doe v. Tr. of Bos. Coll.*, 892 F.3d 67, 79 (1st Cir. 2018) (citing *Kelley v. LaForce*, 288 F.3d 1, 9 (1st Cir. 2002)).

## II. DISCUSSION

Two Rhode Island state courts denied Mr. Shabshelowitz's motion to dismiss his state charges, rejecting his arguments that his indictment was procured by fraud and misconduct. Now Defendants ask this Court to give these state court judgments

5

preclusive effect under the doctrine of collateral estoppel. Alternatively, Defendants also move on the merits. Because a determination that Mr. Shabshelowitz has litigated this claim in state court bars his suit here is dispositive, the Court will begin there.

**Collateral Estoppel**

"[C]ollateral estoppel bars re-litigation of any issues that were, or could have been, brought in a previous action for which judgement was rendered." *Núñez Colón v. Toledo-Dávila*, 648 F.3d 15, 19 (1st Cir. 2011) (citing *Barreto–Rosa v. Varona–Mendez*, 470 F.3d 42, 45 (1st Cir. 2006)). "This policy helps to conserve judicial resources, relieve parties of the burden of re-litigating settled issues, and prevent inconsistent rulings." *Wade v. Brady*, 460 F. Supp. 2d 226, 239 (D. Mass. 2006) (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). "Collateral estoppel is typically applied by federal courts to issues that have been previously litigated in state court in order to promote comity between state and federal courts." *Id.*; *Johnson v. Mahoney*, 424 F.3d 83, 93 (1st Cir. 2005).

Collateral estoppel "requires: (1) an identity of issues; (2) a valid and final judgment on the merits; and (3) establishing that the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior action." *Wiggins v. Rhode Island*, 326 F. Supp. 2d 297, 303 (D.R.I. 2004) (citing *State v. Santiago*, 847 A.2d 252, 254 (R.I. 2004)). "The identity of the issues need not be absolute; rather, it is enough that the issues are in substance identical." *Manganella v. Evanston Ins. Co.*, 700 F.3d 585, 591 (1st Cir. 2012). "As the Restatement of

6

Judgments points out, when a party has litigated such an 'ultimate fact,' and failed, 'new evidentiary facts' may not be brought forward to obtain a different determination of that ultimate fact." *DeCosta v. Viacom Int'l, Inc.*, 981 F.2d 602, 611 (1st Cir. 1992) (quoting *Restatement (Second) of Judgments* § 27, cmt. c.).

While Mr. Shabshelowitz raises thin arguments that Defendants have not met the second and third elements, the Court finds from the record that they have. Because the main discussion points are based on the identity of issues element, the Court focuses its analysis there.

### Identity of Issues

Mr. Shabshelowitz's claim in state court and here is for malicious prosecution.[4] Essentially, Mr. Shabshelowitz argues that the issues raised and resolved in the state

---

[4] To recover damages for malicious prosecution, a party must "prove that (1) defendants initiated a prior criminal proceeding against him, (2) they did not have probable cause to initiate such a proceeding, (3) the proceeding was instituted maliciously, and (4) it terminated in [plaintiff's] favor." *Solitro v. Moffatt*, 523 A.2d 858, 861-62 (R.I. 1987) (citing *Nagy v. McBurney*, 392 A.2d 365 (1978)). Because malicious prosecution cases are disfavored as they may deter prosecutors from doing their jobs, *Solitro*, 523 A.2d at 862 (citing *Powers v. Carvalho*, 368 A.2d 1242 (1977)), a plaintiff must establish "clear proof" of malice and lack of probable cause. *Soares v. Ann & Hope of Rhode Island, Inc.*, 637 A.2d 339, 345 (R.I. 1994) (citing *Solitro*, 523 A.2d at 862).

The Rhode Island Supreme Court "declared that when the plaintiff was bound over by a court and indicted by the grand jury, satisfactory evidence of probable cause was established." *Hill v. Rhode Island State Emp. Ret. Bd.*, 935 A.2d 608, 613 (R.I. 2007) (citing *Giusti v. Del Papa*, 33 A. 526 (1896)). Mr. Shabshelowitz was indicted so in order "[t]o rebut a presumption of probable cause arising from a grand jury indictment, [he] must allege some additional fact showing fraud, perjury, or other undue means." *Id.* at 613-14. "If the allegation is unsupported by clear proof of malice, then it is refuted by the fact that the plaintiff actually was indicted by a grand jury." *Id.* at 614.

case are not identical to those he pleads here. Yet a closer review of the record leads the Court to disagree.

In his state motions, Mr. Shabshelowitz argued that the State engaged in about twenty instances of prosecutorial misconduct, including the presentation of false and manipulated evidence. He thoroughly litigated and challenged whether Lt. Casey and the other prosecution witnesses were being truthful and whether their investigation was thorough as to the Property values evidence. Specifically, he claimed that the State presented false evidence, tampered with a tape of his interview with Lt. Casey, identified a document as false, and withheld an insurance appraisal that tracked the mortgaged value. Mr. Shabshelowitz argued that, but for Lt. Casey's presentation of "flagrant, egregious and prejudicial" evidence, he would not have been indicted.

In his hearing on the motion before a Superior Court Magistrate Judge, Mr. Shabshelowitz testified that Lt. Casey manipulated a tape recording of his testimony in addition to other evidence attacking both the sufficiency and integrity of the evidence supporting probable cause. After hearing all the evidence, the Magistrate Judge held that his claim that the State indicted him because of prosecutorial misconduct were "without merit." He appealed this decision to the Rhode Island Superior Court where that court reviewed the record de novo and determined that Mr. Shabshelowitz "ha[d] not presented evidence of any misconduct by the prosecutor that rose to the level of justifying dismissal[,]" which would be "appropriate only if 'it is established that the violation substantially influenced the

8

grand jury's decision to indict' or if there is 'grave doubt' that the decision to indict was free from substantial influence of such violations." The state courts heard considerable testimony from both sides before finding that there was not enough evidence to find that Lt. Casey and others maliciously prosecuted this case against Mr. Shabshelowitz.

Here, Mr. Shabshelowitz relies on the same issues and evidence to argue that the grand jury would not have indicted him without Lt. Casey's false information and malicious prosecution. For example, Mr. Shabshelowitz alleges in his Complaint that during the grand jury proceedings "Defendant Casey withheld and/or manipulated exculpatory evidence related to the Plaintiff's involvement in the 2006 transaction and his receipt of monies from same" and that the "exculpatory evidence withheld and/or manipulated by Defendant Casey, if presented truthfully and accurately, would not have risen to the level of probable cause needed in order to indict the Plaintiff." ECF No. 26 ¶¶ 20, 22. He also acknowledges that, "In his supplemental motion to dismiss, the Plaintiff stated that the Defendants 'presented false evidence to the grand jury and because its principal witness [Defendant Casey], either lied or misrepresented facts, to the grand jury.'" *Id.* ¶ 30. Mr. Shabshelowitz further alleges in his Complaint that "Defendant Casey represented that the March 9, 2006, letter from the Town of Narragansett was 'false, fraudulent, and forged,'" "[a] State exhibit entitled 'History of 375 Ocean Road' was materially altered," and "[t]here is a mandatory insurance binder(s) [the Chubb appraisal] missing that contained a $2.5 million valuation(s) of the Narragansett Property." *Id.* ¶ 21e. The Court finds that

9

the issues Mr. Shabshelowitz raised in state court are "in substance identical" to the issues raised here, *Manganella*, 700 F.3d at 591, so the identity of issues element of collateral estoppel has been satisfied.

"In order to use the doctrine of collateral estoppel defensively, as Defendants purport to here, it must be clear that the party opposing its usage had a 'full and fair opportunity to litigate an issue' in a prior lawsuit." *Wiggins v. Rhode Island*, 326 F. Supp. 2d 297, 303 (D.R.I. 2004) (citing *Standefer v. United States*, 447 U.S. 10, 24 (1980))); *State v. Wiggs*, 635 A.2d 272, 276 (R.I. 1973) (collateral estoppel applies when plaintiff "had a full and fair opportunity to present evidence and call witnesses" in the state action). Mr. Shabshelowitz had a full evidentiary hearing in which the court heard his testimony and that of Narragansett Town Assessor Majeika and Appraisal Resources President Richard Berlinsky. And Mr. Shabshelowitz did not appeal the Superior Court decision; "failure to appeal an adverse judgment negates the preclusive effect of that judgment only when review was unobtainable 'as a matter of law.' Where review is available but is not sought, estoppel applies." *Wiggins*, 326 F. Supp. 2d at 305 (citing *Pinkney v. Keane*, 920 F.2d 1090, 1096 (2d Cir. 1990) (citation omitted)).

Mr. Shabshelowitz litigated his malicious prosecution claim in state court and failed. Because he has "litigated such an 'ultimate fact,' and failed, 'new evidentiary facts' may not be brought forward to obtain a different determination of that ultimate fact." *DeCosta*, 981 F.2d at 611. The Court finds that collateral estoppel applies and grants Defendants' motion for summary judgment.

10

### III. CONCLUSION

Mr. Shabshelowitz fully litigated his malicious prosecution claim in state court, lost, and decided not to appeal. Because the issues in state court are identical to those brought here (and there was a final disposition and the parties are the same), collateral estoppel bars him from re-litigating a claim he already lost. The Court GRANTS Defendants' Motion for Summary Judgment. ECF No. 53.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief United States District Judge

July 22, 2024

11